[Cite as *State v. Yates*, 2015-Ohio-3087.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**ASHTABULA COUNTY, OHIO**

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2014-A-0044** |
| DENZIL A. YATES, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2013 CR 194.

Judgment: Affirmed.

*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Michelle M. French*, Law Offices Of Michelle M. French, LLC, P.O. Box 293, Jefferson, OH 44047 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1} Appellant, Denzil A. Yates, appeals from the June 25, 2014 judgment of the Ashtabula County Court of Common Pleas, sentencing him for murder and tampering with evidence. On appeal, appellant alleges the trial court erred in failing to accept his guilty plea; his trial counsel rendered ineffective assistance; and the court was required to provide the jury with a voluntary manslaughter instruction. For the reasons stated, we affirm.

{¶2} On March 28, 2013, the Ashtabula County Grand Jury indicted appellant on three counts: count one, aggravated murder, an unclassified felony, in violation of R.C. 2903.01(A), with a firearm specification; count two, murder, an unclassified felony, in violation of R.C. 2903.02(A), with a firearm specification; and count three, tampering with evidence, a felony of the third degree, in violation of R.C. 2921.12(A)(1). Appellant was appointed counsel and entered a not guilty plea at his arraignment.

{¶3} On September 9, 2013, appellant was determined competent to stand trial. However, appellant sent a letter to the trial judge, postmarked September 23, 2013, in which he stated that his mental state was very weak and he was having a difficult time determining what was real and what was fake. Appellant further stated in his letter that there were times when he felt dumb and at a loss for words.

{¶4} The matter was set for a January 15, 2014 jury trial. Appellant desired to withdraw his not guilty plea and a plea hearing was held on January 2, 2014. Appellant entered an oral and written guilty plea to count two of the indictment, murder, an unclassified felony with a three-year firearm specification. The trial court inquired as to how appellant felt that day, and appellant indicated he felt the same way as in his September 23, 2013 letter. The trial court rejected appellant's guilty plea.

{¶5} Less than one week later, a second plea hearing was held on January 6, 2014. Although the state offered a plea by way of *North Carolina v. Alford*, 400 U.S. 25 (1970), appellant rejected it. Appellant advised the court that he wanted to proceed to trial.

{¶6} The jury trial was rescheduled and ultimately commenced on May 21, 2014. The state presented 11 witnesses: Patrolman Pamela M. Bradek; Patrolman

John Bainton; Lieutenant Dennis R. Dibble; Lieutenant Joseph Cellitti; Michael E. Roberts; Edward J. Carlini; Martin Lewis; Diedra Hartz; Emily Feldenchrist; Dr. Thomas Gilson; and Dr. Pamela Lancaster.

{¶7} On March 22, 2013, around 6:07 p.m., Patrolman Bradek with the Ashtabula City Police Department ("ACPD") heard several gunshots coming from the 900 block of West 43rd Street. Patrolman Bradek responded to the area and observed a male subject pointing to another man who was lying on the ground. Immediately thereafter, backup assistance arrived to secure the crime scene. Also, an ambulance arrived to provide aid to the victim, who was identified as James Anderson. Prior to the removal of the victim by EMS, Patrolman Bradek photographed him lying face down between the residences located at 931 and 939 West 43rd Street. The victim sustained gunshot wounds and was rushed to the hospital.

{¶8} Patrolman Bainton, also with the ACPD, was informed that the suspect was a black male wearing black or dark colored clothing traveling north through yards. Patrolman Bainton drove to the area but turned onto West 41st Street while Patrolman Bradek turned onto West 43rd. Patrolman Bainton thought this to be the most likely route to intercept the suspect.

{¶9} Patrolman Bainton observed a man who matched the description, later identified as appellant, walking on the sidewalk. Patrolman Bainton asked appellant if he knew anything about the shooting. Patrolman Bainton indicated appellant claimed he heard the gunshots and saw the suspect run past him. Patrolman Bainton found it suspicious that after the shooting, others were flocking to the crime scene but appellant was walking away.

3

{¶10} Thereafter, Patrolman Bainton detained appellant and drove him to the crime scene. While standing outside the cruiser, another patrol car drove by with some witnesses to the shooting. None of those witnesses were able to identify appellant as the suspect when they drove past him at that time. Patrolman Bainton released appellant from custody and noted on his report that appellant had a laceration to his right palm.

{¶11} Appellant began walking to his nearby residence, 926 West 41st Street. Patrolman Bainton looked in the snowy area for footprints from a fleeing suspect. Patrolman Bainton asked appellant again what he had observed. Patrolman Bainton indicated appellant claimed he heard gunshots and saw a man wearing dark clothing either run up on his porch or pass him, almost knocking him down. Patrolman Bainton later returned to the area of appellant's residence to look for any evidence. He found a black glove along a wooden fence and the matching glove on the other side of a nearby chain link fence.

{¶12} Another officer with the ACPD, Lieutenant Cellitti, was called to assist in the investigation. He went to the hospital in order to interview the victim. However, the victim was unconscious, as he sustained multiple gunshot wounds, including one that went through his head. The victim's clothing was bagged by the hospital staff and taken into evidence. Lieutenant Cellitti called the Ohio Bureau of Criminal Identification and Investigation ("BCI") and requested assistance in processing the crime scene. He accompanied Patrolman Bainton to appellant's residence in an attempt to locate appellant due to information received during the investigation. The officers spoke with appellant's mother who indicated her son was not home.

4

{¶13} As Patrolman Bainton was driving in the area, he observed a vehicle make a u-turn and drive away without headlights. Patrolman Bainton initiated a traffic stop. The driver of the vehicle was identified as Antonio Parker. The passenger was identified as appellant. The men were placed into custody and taken to the police station. Patrolman Bainton now noticed lacerations to both appellant's right and left hands. A DNA standard was taken from appellant and Mr. Parker and gunshot residue testing was also performed on both men.

{¶14} Lieutenant Cellitti interviewed Mr. Parker. However, Mr. Parker was unable to provide any information about the crime at issue. Lieutenant Cellitti also interviewed appellant and read him his Miranda rights. Appellant indicated he knew the victim by the nickname of "Stank." Appellant claimed he injured his hands from nails that were sticking out of his front door. Appellant said he owed the victim $150 for marijuana and that the victim later demanded $200.

{¶15} On the day of the shooting, appellant met the victim at an abandoned house on West 43rd Street. Appellant claimed he did not have the money to pay the victim. At this time, appellant said he did not take a gun with him but that the victim had a gun and a struggle ensued. Lieutenant Cellitti indicated appellant said that he gained control of the gun and shot the victim as he was trying to flee. The victim fell to the ground after the first shot and appellant fired three or four more times after shooting the victim in the head because appellant thought the victim was going to kill him.

{¶16} In the meantime, Lieutenant Dibble with the ACPD searched the crime scene for the weapon. He discovered the gun underneath the front passenger side bumper of a white vehicle behind West 43rd Street. The gun was discovered as a result

5

of following footprints in the snow to the vehicle. This information was provided to Lieutenant Cellitti before he brought appellant back to the scene.

{¶17} At the scene, appellant was asked to point to where the gun was dropped. Appellant ultimately directed the officers to an opening in a fence where the vehicle was located and he pointed to the area underneath the front bumper where the gun had already been discovered. The officers indicated appellant admitted to placing the gun underneath the vehicle, accurately pointed out the area where the victim was found, and revealed where the shooting had occurred.

{¶18} Lieutenant Cellitti accompanied appellant to his residence. Appellant gave consent for officers to collect clothing, including a jacket, a pair of wet shoes, and two do-rags, which were placed into evidence. Appellant was taken back to the police station where he was interviewed a second time for clarification purposes and placed under arrest for murder.

{¶19} Three days after the incident, appellant was interviewed a third time on March 25, 2013. Although appellant initially indicated that the victim brought the gun, appellant changed his story during this interview with Lieutenant Cellitti. According to Lieutenant Cellitti, appellant now admitted that he brought the gun to their meeting, not the victim, and that the victim wanted money from appellant.

{¶20} Regarding the gun and DNA evidence, the state presented witness testimony from BCI employees. Mr. Roberts, a forensic scientist, examined the gun that was recovered from the crime scene. He indicated the gun was operable and that it could have fired the bullets recovered from the victim's body. Mr. Carlini, a special agent, photographed footprints leading from the area of the shooting to the gun. He

said the footprints continued from the area where the gun was located to appellant's residence and that they appeared to be from a person who was running. Two gloves were located while following the footprints. Mr. Lewis, a forensic scientist, performed gunshot residue tests. Three of four samples submitted from appellant's kit tested positive for gunshot residue but none of Mr. Parker's samples tested positive. Also, both gloves tested positive for gunshot residue. Ms. Feldenchrist and Ms. Hartz, forensic scientists, performed DNA analysis on the evidence submitted by the ACPD. DNA swabs taken from the snow at the crime scene were consistent with the victim's DNA. Appellant was the major contributor of DNA swabbed from the inside of both gloves.

{¶21} The state also presented testimony regarding the victim's injuries. Dr. Gilson, Cuyahoga County Chief Medical Examiner, testified the victim sustained four gunshot wounds. He said the cause of death was multiple gunshot wounds to the victim's head, trunk, and extremities with injuries to the brain, skull, visceral organs, and soft tissue. Dr. Lancaster, Ashtabula County Coroner, classified the victim's death as a homicide.

{¶22} After the state rested, appellant presented two witnesses, Kevin and Dorothy Emerick, and appellant also testified on his own behalf. Mr. and Mrs. Emerick reside at 923 West 43rd Street, a few houses down from where the crime occurred. They were home on the evening at issue and heard several gunshots. Mr. Emerick was inside. As soon as he heard gunshots he looked outside. He saw a man run by but could "barely" make out his identity. Mrs. Emerick was in the backyard. As soon as she

7

heard gunshots she ran to the front yard and was almost knocked over by a man that was running. She did not get "a real good look" at the individual.

{¶23} According to appellant, he lived with his mother at 926 West 41st Street. He knew the victim for about one year. Appellant and his family felt threatened by the victim. A few days before the incident at issue, appellant's girlfriend, Shaquana Moore, wanted appellant to sell some drugs for her, which actually belonged to the victim. Appellant kept the drugs at his residence. Appellant received a phone call from the victim who demanded money for his drugs. Appellant claimed he met with the victim and gave him his drugs back. Appellant further claimed the victim wanted to meet him a couple days later because he also wanted $200.

{¶24} On the evening of the shooting, appellant and the victim met on West 43rd Street. Appellant testified he took a gun with him for his protection and was wearing gloves. The two men conversed for a bit. Appellant said he was fearful and that he told the victim he did not owe him anything. Appellant said the victim charged at him and a struggled ensued. Appellant testified he took the gun from his waistband and "just started to click it." Appellant fired more than one shot at the victim just like, "bang, bang, bang, bang, bang." Immediately thereafter, appellant hopped the fence, removed his gloves, hid the gun under a car, and went back to his residence.

{¶25} Following trial, the jury found appellant not guilty on count one, aggravated murder, and guilty on counts two and three, murder with a firearm specification and tampering with evidence. The trial court accepted the verdict and deferred sentencing.

{¶26} On June 25, 2014, appellant was sentenced to 15 years to life in prison for murder, three years for the firearm specification, and three years for tampering with

8

evidence. Both three year terms were ordered to be served consecutively to the sentence for murder, for a total period of incarceration of 21 years to life. Appellant was appointed appellate counsel and filed a timely appeal. Appellant asserts the following three assignments of error for our review:

{¶27} "[1.] The trial court erred to the prejudice of the Appellant by failing to accept the Defendant's tendered guilty plea, in violation of Rule 11(C)(2) of the Ohio Rules of Criminal Procedure, and the Appellant's Rights under the Sixth Amendment to the U.S. Constitution, Article I, Sections 10 and 16, of the Ohio Constitution.

{¶28} "[2.] The due process and fair trial rights of the Defendant-Appellant were violated by the ineffective assistance of his counsel, in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution and Article I, Sections 10 and 16, of the Ohio Constitution.

{¶29} "[3.] The trial court erred to the prejudice of the Appellant by failing to give the jury a voluntary manslaughter instruction when properly supported by the Record, in violation of the Defendant's right to a fair trial guaranteed by the Sixth Amendment to the U.S. Constitution and Article I, Sections 10 and 16 of the Ohio Constitution."

{¶30} In his first assignment of error, appellant argues the trial court erred in failing to accept his tendered oral and written "knowing, intelligent, and voluntary" guilty plea to count two of the indictment, murder, in violation of Crim.R. 11(C)(2) and his rights under the United States and Ohio Constitutions, in exchange for the state agreeing to dismiss counts one and three and recommending a minimum sentence. Appellant further contends the trial court did not give him the opportunity to plead by way of *Alford*.

9

**{¶31}** In felony cases, a decision to accept or refuse a guilty plea under Crim.R. 11 is within the sound discretion of the trial court. The term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record. *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925). An abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶15 (8th Dist.).

**{¶32}** Crim.R. 11(C) provides:

**{¶33}** "(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:

**{¶34}** "(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

**{¶35}** "(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

**{¶36}** "(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a

10

reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself."

**{¶37}** "Ohio Case Law supports the view that a decision to accept, or refuse, appellant's 'guilty' plea under Ohio Criminal Rule 11 in felony cases is within the sound discretion of the trial court. In *State v. Jackson* (1980), 68 Ohio App.2d 35, the first syllabus states that a defendant has no constitutional right to plead guilty to an offense. Further, that the decision as to whether to accept such a plea rests within the sound discretion of the trial court. Judge Day also had this to say at page 36 of *Jackson*:

**{¶38}** "'Ohio Criminal Rule 11, like its federal counterpart, vests a me[a]sure of discretion in the trial court in determining whether to accept a plea.'

**{¶39}** "Ohio Criminal Rule 11 is modeled after the Federal Rules. As such, Federal law affirms that the trial court is not mandated to accept a guilty plea. There is no absolute or constitutional right to have a guilty plea accepted.

**{¶40}** "'A Court may reject a plea in exercise of sound judicial discretion.' *Santobello v. New York* (1971), 404 U.S. 247. (See also *North Carolina v. Alford*, (1970), 400 U.S. 25." *State v. Fulaytar*, 11th Dist. Lake No. 9-147, 1983 Ohio App. LEXIS 14367, *5-6 (Sept. 23, 1983).

**{¶41}** Although a defendant has no absolute right to have a guilty plea accepted, the court's discretion is not without limits. *See State v. Caldwell*, 8th Dist. Cuyahoga No. 99166, 2013-Ohio-5017, ¶10-11. "For example, a trial court abuses its discretion when it rejects a plea agreement by relying on a blanket policy rather than considering the facts and circumstances of the particular case." *Id.* at ¶11, citing *State v. Fitzgerald*, 188 Ohio App.3d 701, 2010-Ohio-3721, ¶11 (8th Dist). A court's discretion for its

11

decision to reject a plea should be apparent from the facts and circumstances in the record. *See Caldwell* at ¶12.

{¶42} In this case, the facts and circumstances establish the trial court did not abuse its discretion in not accepting appellant's plea. As stated, appellant initially pleaded not guilty at his arraignment. Appellant later sent a letter to the trial judge, postmarked September 23, 2013, in which he stated that his mental state was very weak and he was having a difficult time determining what was real and what was fake. Appellant further stated in his letter that there were times when he felt dumb and at a loss for words.

{¶43} Thereafter, appellant desired to withdraw his not guilty plea and a plea hearing was held on January 2, 2014. Appellant entered an oral and written guilty plea to count two of the indictment, murder, an unclassified felony with a three-year firearm specification. The trial court inquired as to how appellant felt that day, and appellant indicated he felt the same way as in his September 23, 2013 letter, i.e, he possessed a very weak mental state; had a difficult time determining what was real and what was fake; and felt dumb and at a loss for words.

{¶44} The trial court continued by personally addressing appellant pursuant to Crim.R. 11. Appellant indicated the following during his exchange with the trial judge: he understood the nature of the charge and the associated penalties; was represented by counsel and had an opportunity to speak with him; stated he understood the effect of a guilty plea and that he would be immediately sentenced; was informed of his right to a jury trial, to confront witnesses, to compulsory process, to obtain witnesses, to have the

12

state prove all the elements of the offense beyond a reasonable doubt, and to not be compelled to testify against himself.

{¶45} Appellant further advised the trial court that he did not kill the victim on purpose but that he killed him because he was scared. However, the state indicated that the evidence establishes that appellant purposely killed the victim and that this was not an act of self-defense. Specifically, the prosecutor stated at the hearing:

{¶46} "Well, the State has the evidence that the defendant was armed and the victim was unarmed. We have the testimony of the coroner that the victim was shot in the head. And after he fell to the ground, he was shot about four or five times in the back and lower body portions. We'll also have the defendant's actual confession, Mirandized confession on audio/video that he shot - - that he brought the gun to the confrontation and he purposely shot the victim and killed him and then hid the gun afterward."

{¶47} After an inquiry by the trial judge with appellant regarding the state's evidence, appellant again advised the court that he did not kill the victim on purpose but that he killed him because he was scared, owed the victim money, and thought that the victim was going to bring a gun.

{¶48} Upon review, the trial court exercised its sound judicial discretion in rejecting appellant's plea. *See Santobello, supra; Fulaytar, supra,* at *5-6. Although the trial court did not expressly state specific reasons for not accepting appellant's plea, the facts and circumstances establish appellant's plea to waive his right to trial was not knowing, voluntary, and intelligent. *See Caldwell* at ¶12. Thus, the trial court did not abuse its discretion in not accepting appellant's plea at the January 2, 2014 hearing.

13

We further note again that less than one week later, a second plea hearing was held. However, appellant rejected the state's plea offer by way of *Alford* and he advised the court that he wanted to proceed to trial. Therefore, *Alford* is a non-issue.

{¶49} Appellant's first assignment of error is without merit.

{¶50} In his second assignment of error, appellant contends he was denied effective assistance and a fair trial because his trial counsel's legal service fell below the standard of reasonable representation, resulting in a longer sentence.

{¶51} With respect to an ineffective assistance of counsel claim, this court stated in *State v. Henry*, 11th Dist. Lake No. 2007-L-142, 2009-Ohio-1138, ¶50-52:[1]

{¶52} "Preliminarily, we note that *Strickland v. Washington* (1984), 466 U.S. 668, 687 * * * states:

{¶53} "'(a) convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction (* * *) has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction (* * *) resulted from a breakdown in the adversary process that renders the result unreliable.'

{¶54} "'(* * *) When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below

---

1. *See also State v. Peoples*, 11th Dist. Lake No. 2005-L-158, 2010-Ohio-2523, ¶17-30.

14

an objective standard of reasonableness.' Id. at 687-688. *State v. Bradley* (1989), 42 Ohio St.3d 136, 142 * * *, quoting *Strickland, supra*, at 694, states: '(t)o warrant reversal, "(t)he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

{¶55} In the instant matter, appellant alleges his trial counsel was ineffective because he did not object to the trial court's failure to accept appellant's plea and to suggest that the plea be accepted under *Alford*. We note, however, that a failure to object does not substantiate a claim of ineffective assistance of counsel. *Henry, supra,* at ¶78.

{¶56} As addressed in appellant's first assignment of error, the trial court did not abuse its discretion in declining to accept appellant's guilty plea as the facts and circumstances establish it was not knowing, voluntary, and intelligent. Also, as stated, although the state offered an *Alford* plea, appellant rejected it. Thus, *Alford* is a non-issue. Pursuant to *Strickland, supra*, appellant fails to show that his counsel's performance was deficient and that the deficient performance prejudiced the defense.

{¶57} Appellant's second assignment of error is without merit.

{¶58} In his third assignment of error, appellant alleges the trial court erred by failing to give the jury a voluntary manslaughter instruction in violation of his right to a fair trial.

{¶59} "The decision to issue a particular jury instruction rests within the sound discretion of the trial court." *State v. Huckabee*, 11th Dist. Geauga No. 99-G-2252,

15

2001 Ohio App. LEXIS 1122, *18 (Mar. 9, 2001). Absent an abuse of discretion this court will not reverse the trial court's decision to provide the jury with a specific instruction. *Id.*

{¶60} In the instant case, appellant was convicted of "murder" pursuant to R.C. 2903.02(A) which provides: "[n]o person shall purposely cause the death of another or the unlawful termination of another's pregnancy."

{¶61} R.C. 2903.03(A), which defines "voluntary manslaughter," states: "[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another or the unlawful termination of another's pregnancy."

{¶62} Voluntary manslaughter is not a lesser included offense of murder. *See State v. Perry*, 11th Dist. Trumbull No. 94-T-5165, 1997 Ohio App. LEXIS 3884, *9 (Aug. 29, 1997), citing *State v. Tyler*, 50 Ohio St.3d 24 (1990). Rather, voluntary manslaughter is an inferior-degree offense to murder. *See State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, ¶80, citing *State v. Benge*, 75 Ohio St.3d 136, 140 (1996).

{¶63} "As with lesser included offenses, a court should give an instruction on the inferior degree of the charged offense *only when the evidence presented at trial is such that the jury could both reasonably acquit the defendant of the charged offense while convicting the defendant of the inferior-degree offense.*" *Perry, supra,* at *10-11, citing *Tyler, supra,* at 37. Therefore, a defendant charged with murder is only entitled to an instruction on voluntary manslaughter when the evidence produced at trial would

16

reasonably support both an acquittal on the charge of murder and a conviction for voluntary manslaughter. (*Emphasis sic*) *Perry* at *11.

**{¶64}** "Before giving an instruction on voluntary manslaughter in a murder case, the trial court must determine 'whether evidence of reasonably sufficient provocation occasioned by the victim has been presented to warrant such an instruction.' *State v. Shane* (1992), 63 Ohio St.3d 630, * * *, paragraph one of the syllabus. In making that determination, trial courts must apply an objective standard: 'For provocation to be reasonably sufficient, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control.' Id. at 635, * * *." (Parallel citations omitted.) *Elmore, supra,* at ¶81.

**{¶65}** In the case sub judice, appellant asserts he was entitled to a voluntary manslaughter instruction because the victim made threats against him and his family as well as charged at him during their encounter. However, neither words alone nor fear itself will constitute evidence of serious provocation. The Supreme Court of Ohio has held that "words alone will not constitute reasonably sufficient provocation to incite the use of deadly force in most situations." *Shane, supra,* at 637. "Fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage." *State v. Mack*, 82 Ohio St.3d 198, 201 (1998).

**{¶66}** Based on the facts and circumstances presented in this case, appellant fails to establish sufficient provocation to incite the use of deadly force, especially since he was the one that was armed with a gun and the victim was not. Appellant's act of shooting the victim in the head and then shooting the victim several more times after he fell to the ground does not demonstrate that appellant acted impulsively or under

17

sudden passion. We find the trial court, which gave an instruction of self-defense, did not abuse its discretion in not providing the jury with a voluntary manslaughter instruction.

{¶67} Appellant's third assignment of error is without merit.

{¶68} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Ashtabula County Court of Common Pleas is affirmed.

CYNTHIA WESTCOTT RICE, J., concurs,

TIMOTHY P. CANNON, P.J., concurs in judgment only with a Concurring Opinion.

_____

TIMOTHY P. CANNON, P.J., concurring in judgment only.

{¶69} I respectfully concur in judgment only.

{¶70} With respect to the trial court's decision to reject appellant's initial plea, it is clear appellant signed a written plea of guilty to the murder charge and verbally entered a plea of guilty. I do not agree the plea was rejected because the trial court determined it was not a knowing, voluntary, and intelligent plea. To the contrary, it appears appellant knew exactly what was going on and understood the implications of his plea. It appears the trial court rejected the plea because appellant denied committing the offense. Appellant stood before the judge and denied he purposefully killed the decedent. The trial court properly rejected his plea.

{¶71} Finally, with regard to the requested jury instruction, I believe clarification is needed with respect to our standard of review. I am aware of the numerous cases

that suggest an appellate court should not disturb the trial court's decision on whether to give a particular jury instruction absent an abuse of discretion. However, as applied, I do not think that is actually the standard.

{¶72} In fact, *State v. Huckabee*, 11th Dist. Geauga No. 99-G-2252, 2001 Ohio App. LEXIS 1122 (Mar. 9, 2001), a case from this district, and cited by the majority for the proposition that the "decision to issue a particular jury instruction rests within the sound discretion of the trial court," *id.* at *18, illustrates this concern. In *Huckabee,* this court stated: "The decision to issue a particular jury instruction rests within the sound discretion of the trial court. * * *." *Id.* Accordingly, this court will not reverse a decision concerning the giving of jury instructions absent an abuse of discretion."

{¶73} In the paragraph immediately preceding the aforementioned sentence, however, this court stated:

> Generally, 'a defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged[.]' *State v. Adams* (1980), 62 Ohio St. 2d 151, 153, 404 N.E.2d 144. *See, also, State v. Comen* (1990), 50 Ohio St. 3d 206, 553 N.E.2d 640, paragraph two of the syllabus (holding that "after arguments are complete, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder."); State v. Simon, 2000 Ohio App. LEXIS 2272. Stated differently, a 'criminal defendant is entitled to have a trial court give complete and accurate jury instructions on all issues raised by the evidence.' *Huckabee* at *17-*18.

(Internal citations omitted.)

{¶74} How can these two concepts be reconciled? It cannot be that a criminal defendant is entitled to have an instruction given to the jury if warranted by the evidence, but the trial court has discretion to refuse to give it.

19

**{¶75}** In *State v. Sneed*, 63 Ohio St.3d 3 (1992), the Ohio Supreme Court clearly held:

> We have previously stated that 'it is prejudicial error in a criminal case to refuse to administer a requested charge which is pertinent to the case, states the law correctly, and is not covered by the general charge.'
>
> Moreover, the criminal defendant is entitled to have the trial court give complete and accurate jury instructions on all the issues raised by the evidence. *State v. Williford*, 49 Ohio St.3d 247, 251 (1990). However, it is not incumbent upon the trial court to give the defendant's requested instructions to the jury verbatim; the court may use its own language to communicate the same legal principles. *State v. Nelson* (1973), 36 Ohio St.2d 79, paragraph one of the syllabus; *State v. Hicks* (1989), 43 Ohio St.3d 72, 77, 538 N.E.2d 1030, 1037. *See, also, State v. Broom* (1988), 40 Ohio St.3d 277, 289, 533 N.E.2d 682, 696, where we upheld the trial judge's failure to give the defendant's proposed instruction because the substance of the instruction, regarding the credibility of witnesses, was included in the trial court's general charge to the jury. *Sneed* at ¶9.

**{¶76}** A recent case from the Sixth Appellate District also reflects the incongruous standard. In *State v. Keahey*, 6th Dist. Erie No. E-13-009, 2014-Ohio-4729, the court set forth what I believe is an excellent analysis of what we *should* be considering with regard to the decision to give a jury instruction. The *Keahey* Court stated: "Appellant correctly states that the inquiry into whether sufficient evidence has been presented to raise an affirmative defense is a matter of law that is reviewed de novo." *Id.* at ¶44.

**{¶77}** I agree that *should* be the inquiry. But the next sentence states: "However, the trial court's ultimate decision to refuse the requested jury instructions will not be overturned on appeal absent a finding of abuse of discretion." *Id.* The *Keahey* Court elaborated:

> In cases where the requested instruction involves an affirmative defense, the accused must show that he or she 'has introduced sufficient evidence which, if believed, would raise a question in the minds of reasonable people concerning the existence of that defense.' *State v. Carter*, 4th Dist. Ross No. 10CA3169, 2010-Ohio-6316, ¶ 58, citing *State v. Melchior*, 56 Ohio St.2d 15, paragraph one of the syllabus. It is the duty of the defendant to 'first present sufficient evidence at trial to warrant such an instruction.' *Belanger*, at ¶3. Such evidence is to be viewed in a light most favorable to the defendant. *Id.* Nevertheless, the trial court may 'omit any requested instructions that are not correct statements of the law and applicable to the case before it.' *Id.*, citing *State v. Scott*, 26 Ohio St.3d 92 (1986)."

*Id.* at ¶45.

**{¶78}** It further stated: "After considering the entire record in a light most favorable to appellant, we find that appellant failed to produce sufficient evidence to meet his burden as to the first and third elements of the affirmative defense of self-defense. * * *." *Id.* at ¶51.

**{¶79}** Because the trial court must give the instruction if warranted by the evidence, I think this should be the proper analysis. But then the *Keahey* Court concluded with the following: "Based on the foregoing, we conclude that the trial court did not err or otherwise abuse its discretion by refusing to provide the jury with a self-defense instruction." *Id.* at ¶52.

**{¶80}** This statement suggests that somehow, even if there was sufficient evidence to warrant the instruction, the trial court would have discretion not to give it. I do not believe this to be the proper standard.

**{¶81}** This court, and in fact this writer, has addressed this issue in a similar, somewhat conflicting analysis. For example, in *State v. Jeffers*, 11th Dist. Lake No. 2007-L-011, 2008-Ohio-1894, ¶33, this court held that:

[r]equested jury instructions should be given if they are (1) correct statements of the applicable law, (2) relevant to the facts of the case, and (3) not included in the general charge to the jury." The decision of whether to give a particular jury instruction lies within the trial court's discretion. 'The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable.'

(Internal citations omitted). In *State v Nadock*, 11th Dist. Lake No. 2009-L-042, 2010-Ohio-1161, ¶45, this court held:

{¶82} A requested instruction should be given if it represents a correct statement of the law, it is relevant to the facts of the case, and has not been given in the general charge. For the purpose of appellate review, "'[t]he decision to issue a particular jury instruction rests within the sound discretion of the trial court.'" *Id.* at ¶45. (Internal citations omitted). It is inconsistent to hold that, on one hand, if the evidence warrants an instruction, the party requesting it is entitled to have it given, but on the other hand, state there is deference to the discretion of the trial court as to whether it will actually be given. I think the proper analysis should be as follows: Based on a review of the evidence in a light most favorable to the party requesting the instruction, the instruction must be given if there is sufficient evidence.

{¶83} I accordingly concur in judgment only.