[Cite as *State v. McAdams*, 2016-Ohio-8225.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

LAKE COUNTY, OHIO


STATE OF OHIO,                          :        **O P I N I O N**

      Plaintiff-Appellee,          :

      - vs -                              :        **CASE NO. 2016-L-028**

RAYMOND J. MCADAMS,            :

      Defendant-Appellant.        :


Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2015 CR 000606.

Judgment: Affirmed.


*Charles E. Coulson*, Lake County Prosecutor, and *Teri R. Daniel*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Ruth R. Fischbein-Cohen*, 3552 Severn Road, #613, Cleveland Heights, OH 44118 (For Defendant-Appellant).


COLLEEN MARY O'TOOLE, J.

{¶1} Appellant, Raymond J. McAdams, appeals from the March 14, 2016 judgment of the Lake County Court of Common Pleas, sentencing him to 24 months in prison for domestic violence following a jury trial. On appeal, appellant raises issues that his trial counsel was ineffective and that the jury's verdict is not supported by

sufficient evidence and is against the manifest weight of the evidence. For the reasons stated, we affirm.

{¶2} On November 16, 2015, appellant was indicted by the Lake County Grand Jury on one count of domestic violence, a felony of the third degree, in violation of R.C. 2919.25(A).[1] Appellant was represented by counsel and waived his right to be present at the arraignment. The trial court entered a not guilty plea on his behalf.

{¶3} A jury trial commenced on February 1, 2016.

{¶4} Seven witnesses testified for appellee, the state of Ohio: Adam Lasota, a dispatcher with the Lake County Sheriff's Department; Brigette Smalley, a dispatcher with the Willoughby Police Department ("WPD"); Officers Jason Pitt, Chris Scozzie, and Ross Shirey, patrolmen with the WPD; George Bielfelt, appellant's and the victim's landlord; and the victim.

{¶5} Appellant and the victim were boyfriend and girlfriend. They lived together in an apartment owned by Mr. Bielfelt in downtown Willoughby for about one year. During the afternoon on July 18, 2015, appellant and the victim visited her friend, Karen Eggler. They had some drinks and listened to music. Ms. Eggler later asked appellant to leave because he was being "nasty" to the victim. Appellant left but the victim stayed. The victim had five to six beers that afternoon.

{¶6} Later that evening, the victim called appellant to pick her up. After appellant arrived, the victim asked him to drive her to Record Exchange. Appellant took her there and told her she had five minutes to shop or he would leave. The victim ran in, purchased a CD, and returned to the vehicle. The victim assumed they were going

---

1. The charge arose from an altercation between appellant and Nan Manson, his live-in girlfriend ("the victim"), which occurred in appellant's vehicle on July 18, 2015 in Willoughby, Lake County, Ohio.

to go home. However, appellant pulled out and drove in the opposite direction. The victim asked appellant where they were going. The victim stated that appellant replied, "Shut the fuck up. I'm about to kill you."

{¶7} The two began fighting in the car. The victim testified that appellant started to turn the vehicle into a light pole while yelling at her, "I'm going to kill you, you fucking bitch." The victim grabbed the steering wheel and begged appellant to stop. He eventually stopped the car on a side street. According to the victim, appellant began hitting her in the chest and on top of her head with a closed fist and told her again that he was going to kill her. After a couple of minutes, appellant began driving off.

{¶8} However, appellant stopped the car again. The victim stated appellant proceeded to hit her more, told her he was going to bite her nose off, and said, "Nobody's gonna love you." The victim said appellant reclined her seat, put his hands on her throat, and told her again, "I'm gonna fucking kill you, bitch." The victim thought she was going to die. She began kicking appellant, managed to escape, ran to a nearby house, and called 911.

{¶9} Dispatchers Lasota and Smalley testified that when the 911 call came in from the victim, she was "highly upset" and indicated she had been assaulted. The victim was screaming and crying. She was afraid for her life.

{¶10} When Officer Pitt arrived at the scene, he saw the victim flagging him down. Officer Pitt testified that the victim was waving her arms in a "hysterical fashion." The victim said she was assaulted. She was upset, crying, and carrying on. She appeared to be intoxicated as Officer Pitt smelled alcohol and said the victim's speech

was slurred. However, Officer Pitt said she was able to hold a conversation with him and told him what had happened.

**{¶11}** Officers Scozzie and Shirey also arrived at the scene and testified at the trial for the state. Officer Scozzie said that the victim explained she was a passenger in appellant's car and that a verbal exchange escalated into a physical altercation. The victim stated that appellant punched her in the face and head. Officer Shirey described the victim as being "frantic" when explaining the altercation she had with appellant. The officers understood the victim even though she appeared to be intoxicated. Officer Scozzie said she was "fairly coherent."

**{¶12}** The officers observed fresh scratches on the victim's upper arms, a small laceration on her nose, and a slight bump on her head. While filling out police forms, the victim became light-headed and dizzy. The officers later saw no injuries on appellant.

**{¶13}** The state introduced 17 exhibits, including 911 audio, location photographs, victim photographs, dash cam footage, appellant's booking photographs, and a DVD interview with the victim. (State's Exhibits 1, 2A-B, 3A-B, 4A-E, 5, 6A-D, 7, and 8).

**{¶14}** At the close of the state's case, defense counsel moved for an acquittal pursuant to Crim.R. 29 which was overruled by the trial court.

**{¶15}** Appellant was the sole witness to testify for the defense. According to appellant, the victim was the aggressor. Appellant testified that while he was driving, the victim grabbed the steering wheel and began kicking and punching him. During the scuffle, appellant said the victim pulled the emergency brake. Appellant stated he

4

managed to push her head and recline the passenger seat before she ran out of the car. Appellant claimed he was only trying to block getting hit by the victim and did not strike her. Appellant said he needed to defend himself.

{¶16} Defense counsel renewed its Crim.R. 29 motion for acquittal which was overruled by the trial court.

{¶17} Following trial, the jury found appellant guilty of domestic violence as charged in the indictment. The trial court referred the matter to the Adult Probation Department for a presentence investigation report and a victim impact statement.

{¶18} On March 14, 2016, the trial court sentenced appellant to 24 months in prison and notified him that post-release control is mandatory for three years. Appellant filed a timely appeal and raises the following two assignments of error:

{¶19} "[1.] Defense counsel was ineffective by failing to object to the presentation of pictures which served to prejudice defendant under Evid.R. 403.

{¶20} "[2.] The verdict was not supported by sufficient evidence and it was against the manifest weight of the evidence."

{¶21} In his first assignment of error, appellant argues his trial counsel was ineffective because she did not object to the presentation of pictures which prejudiced him under Evid.R. 403(A) and (B).

{¶22} "'In order to prevail on an ineffective assistance of counsel claim, a petitioner must satisfy the two-prong test set forth in *Strickland v. Washington* (1984), 466 U.S. 668 * * * (* * *). * * * Thus, appellant must show that counsel's performance was deficient and "must also show prejudice resulting from the deficient performance."'" (Citations omitted.) *State v. Kirschenmann*, 11th Dist. Portage Nos. 2014-P-0031 and

5

2014-P-0032, 2015-Ohio-3544, ¶16. *See State v. Henry*, 11th Dist. Lake No. 2007-L-142, 2009-Ohio-1138, ¶50-59; *State v. Peoples*, 11th Dist. Lake No. 2005-L-158, 2010-Ohio-2523, ¶17-30.

{¶23} "'Under *Strickland* as interpreted by Ohio courts, attorneys are presumed competent, reviewing courts must refrain from second-guessing strategic, tactical decisions and strongly presume that counsel's performance falls within a wide range of reasonable legal assistance.'" *State v. Brown*, 11th Dist. Ashtabula No. 2013-A-0065, 2014-Ohio-2878, ¶42, quoting *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). "'Trial tactics (including a failure to object) do not substantiate a claim of ineffective assistance of counsel.'" *Brown, supra,* at ¶50, quoting *Henry, supra*, at ¶78.

{¶24} Evid.R. 401, "Definition of 'relevant evidence,'" states:

{¶25} "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

{¶26} Evid.R. 403, "Exclusion of relevant evidence on grounds of prejudice, confusion, or undue delay," states:

{¶27} "(A) Exclusion mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

{¶28} "(B) Exclusion discretionary. Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."

6

{¶29} In this case, the record shows the state introduced 17 exhibits, including 911 audio, location photographs, victim photographs, dash cam footage, appellant's booking photographs, and a DVD interview with the victim. On appeal, appellant makes a general assertion that his trial counsel should have objected to the admission of the state's "photographs/exhibits" because they were irrelevant. However, appellant fails to specifically explain which particular exhibit(s) were irrelevant and fails to explain how they were inflammatory and caused him prejudice.

{¶30} When considered as a whole, we fail to see how the "photographs/exhibits" created a prejudicial effect sufficient to substantially outweigh the evidence's probative value. *See* Evid.R. 403; *State v. Kovacic*, 11th Dist. Lake No. 2010-L-065, 2012-Ohio-219, ¶33. Trial counsel's failure to object, i.e., a trial tactic, will not be second-guessed by this court. *Brown, supra,* at ¶50, quoting *Henry, supra*, at ¶78. Appellant cannot show prejudice as a result from any deficient performance and cannot show that the outcome would have been different. Thus, appellant fails to satisfy both prongs under *Strickland.*

{¶31} Appellant's first assignment of error is without merit.

{¶32} In his second assignment of error, appellant presents both a sufficiency and a manifest weight argument.

{¶33} With regard to sufficiency, in *State v. Bridgeman*, 55 Ohio St.2d 261 (1978), the Supreme Court of Ohio established the test for determining whether a Crim.R. 29 motion for acquittal is properly denied. The Court stated that "[p]ursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material

element of a crime has been proved beyond a reasonable doubt." *Id.* at syllabus. "Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state." *State v. Patrick*, 11th Dist. Trumbull Nos. 2003-T-0166 and 2003-T-0167, 2004-Ohio-6688, ¶18.

{¶34} As this court stated in *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 Ohio App. LEXIS 5862, *13-15 (Dec. 23, 1994):

{¶35} "'Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while 'manifest weight' contests the believability of the evidence presented.

{¶36} ""The test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. *The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence.*'"

{¶37} "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence 'in a light most favorable to the prosecution,' '(a) reviewing court (should) not reverse a [guilty] verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.'" * * *

{¶38} "On the other hand, 'manifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.

{¶39} "'In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record, *weighs the evidence* and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)"'" (Citations omitted.) * * *" (Emphasis sic.) (Citations omitted.)

{¶40} Regarding sufficiency, "a reviewing court must look to the evidence presented * * * to assess whether the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt." *State v. March*, 11th Dist. Lake No. 98-L-065, 1999 Ohio App. LEXIS 3333, *8 (July 16, 1999). The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry. *State v. Jenks*, 61 Ohio St.3d 259, paragraph two of the syllabus (1991), superseded by state constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89 (1997). Further, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997).

{¶41} Regarding manifest weight, a judgment of a trial court should be reversed "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). The trier of fact is in the best position to assess the credibility of witnesses. *State v. DeHass*, 10 Ohio St.2d 230, paragraph one of the syllabus (1967).

**{¶42}** "[C]ircumstantial evidence and direct evidence inherently possess the same probative value." *State v. Fasline*, 11th Dist. Trumbull No. 2014-T-0004, 2015-Ohio-715, ¶39, citing *State v. Biros*, 78 Ohio St.3d 426, 447 (1997), citing *Jenks, supra*, paragraph one of the syllabus.

**{¶43}** "A finding that a judgment is not against the manifest weight of the evidence necessarily means the judgment is supported by sufficient evidence." *Patterson v. Godale*, 11th Dist. Lake Nos. 2014-L-034 and 2014-L-042, 2014-Ohio-5615, ¶23, citing *State v. Arcaro*, 11th Dist. Ashtabula No. 2012-A-0028, 2013-Ohio-1842, ¶32 ("'Since there must be sufficient evidence to take a case to the jury, it follows that "a finding that a conviction is supported by the *weight* of the evidence necessarily must include a finding of sufficiency."'" (Emphasis sic.) (Citations omitted.))

**{¶44}** For the reasons addressed below, we determine the judgment is not against the manifest weight of the evidence and, thus, further conclude it is supported by sufficient evidence.

**{¶45}** Appellant takes issue with the guilty finding for domestic violence, a felony of the third degree, in violation of R.C. 2919.25(A), which states: "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member."

**{¶46}** The term "knowingly" is defined in R.C. 2901.22(B), which states: "[a] person acts knowingly, regardless of his purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist."

**{¶47}** A live-in "boyfriend and girlfriend" situation, like the case at bar, satisfies the "family or household member" element under R.C. 2919.25(A). *See* R.C. 2919.25(F)(1)(a)(i) and (F)(2); *State v. Miller*, 3d Dist. Henry No. 7-12-07, 2012-Ohio-6115, ¶25.

**{¶48}** Appellant claims this is a "he said, she said" case. Appellant further claims the victim is not credible, previously lied to the police regarding a prior conviction, and was intoxicated during the incident. Appellant stresses that no one saw what happened. According to appellant, the victim was the aggressor and tried to steer the car off-road. He said she kicked and punched him. Appellant also said he needed to defend himself.

**{¶49}** The state, however, presented testimony that appellant was the aggressor. As stated, appellant and the victim were boyfriend and girlfriend. They lived together in an apartment for about one year. During the afternoon at issue, appellant and the victim visited her friend, Ms. Eggler, who later asked appellant to leave because he was being "nasty" to the victim. Appellant left but the victim stayed. The victim had five to six beers.

**{¶50}** Later that evening, appellant picked up the victim and drove her to Record Exchange. The victim purchased a CD and returned to the vehicle. Appellant pulled out and drove in the opposite direction of their apartment. The victim asked appellant where they were going. The victim stated that appellant replied, "Shut the fuck up. I'm about to kill you."

11

**{¶51}** The two began fighting in the car. The victim testified that appellant started to turn the vehicle into a light pole while yelling at her, "I'm going to kill you, you fucking bitch." The victim grabbed the steering wheel and begged appellant to stop. He eventually stopped the car on a side street. According to the victim, appellant began hitting her in the chest and on top of her head with a closed fist and told her again that he was going to kill her. After a couple of minutes, appellant began driving off.

**{¶52}** However, appellant stopped the vehicle again. The victim stated appellant proceeded to hit her more, told her he was going to bite her nose off, and said, "Nobody's gonna love you." The victim said appellant reclined her seat, put his hands on her throat, and told her again, "I'm gonna fucking kill you, bitch." The victim thought she was going to die. She began kicking appellant, managed to escape, ran to a nearby house, and called 911.

**{¶53}** Dispatchers Lasota and Smalley testified that when the 911 call came in from the victim, she was "highly upset" and indicated she had been assaulted. The victim was screaming, crying, and afraid for her life.

**{¶54}** When Officer Pitt arrived at the scene, he saw the victim flagging him down. Officer Pitt testified that the victim was waving her arms in a "hysterical fashion." The victim said she was assaulted. She was upset, crying, and carrying on. She appeared to be intoxicated as Officer Pitt smelled alcohol and said the victim's speech was slurred. However, Officer Pitt said she was able to hold a conversation with him and told him what had happened.

**{¶55}** Officer Scozzie said that the victim explained she was a passenger in appellant's car and that a verbal exchange escalated into a physical altercation. The

victim stated that appellant punched her in the face and head. Officer Shirey described the victim as being "frantic" when explaining the altercation she had with appellant. The officers understood the victim even though she appeared to be intoxicated. Officer Scozzie said she was "fairly coherent."

{¶56} The officers observed fresh scratches on the victim's upper arms, a small laceration on her nose, and a slight bump on her head. While filling out police forms, the victim became light-headed and dizzy. The officers later saw no injuries on appellant.

{¶57} The foregoing testimony was corroborated by the state's exhibits, including 911 audio, location photographs, victim photographs, dash cam footage, appellant's booking photographs, and a DVD interview with the victim. (State's Exhibits 1, 2A-B, 3A-B, 4A-E, 5, 6A-D, 7, and 8).

{¶58} Pursuant to *Schlee, supra*, there is sufficient evidence upon which the jury could reasonably conclude beyond a reasonable doubt that the elements of domestic violence were proven. Thus, the trial court did not err in overruling appellant's Crim.R. 29 motion.

{¶59} Also, the jury chose to believe the state's seven witnesses as opposed to appellant. *DeHass, supra*, at paragraph one of the syllabus. Based on the evidence presented, as previously stated, we cannot say that the jury clearly lost its way in finding appellant guilty of domestic violence. *Schlee, supra*, at *14-15; *Thompkins, supra*, at 387.

{¶60} Appellant's second assignment of error is without merit.

13

{¶61} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.

DIANE V. GRENDELL, J.,

THOMAS R. WRIGHT, J.

concur.