[Cite as *State v. Carroll*, 2018-Ohio-1884.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NOS. 2017-A-0030 and 2017-A-0031** |
| GREGORY ALLEN CARROLL, a.k.a. GREGERY A. CARROLL, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case Nos. 2016 CR 00616 and 2016 CR 00697.

Judgment: Affirmed.

*Nicholas Iarocci*, Ashtabula County Prosecutor, and *Shelley Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Anna Markovich*, 18975 Villaview Road, Suite 3, Cleveland, OH 44119 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1} Appellant, Gregory Allen Carroll, a.k.a. Gregery A. Carroll, appeals from the May 5, 2017 judgments of the Ashtabula County Court of Common Pleas, sentencing him for robbery, theft from a person in a protected class, theft, and forgery following a bench trial. On appeal, appellant raises issues involving ineffective

assistance of counsel, admissibility of evidence, and restitution. Finding no reversible error, we affirm.

{¶2} On November 16, 2016, in Case No. 2016 CR 00616, appellant was indicted by the Ashtabula County Grand Jury on two counts: count one, robbery, a felony of the second degree, in violation of R.C. 2911.02(A)(2); and count two, theft from a person in a protected class, a felony of the fifth degree, in violation of R.C. 2913.02(A)(1) and (B)(3).

{¶3} On December 7, 2016, in Case No. 2016 CR 00697, appellant was indicted by the Ashtabula County Grand Jury on two counts: count one, theft, a felony of the fifth degree, in violation of R.C. 2913.02(A)(1) and (B)(2); and count two, forgery, a felony of the fifth degree, in violation of R.C. 2913.31(A)(3).

{¶4} Appellant, an indigent, was appointed counsel and pleaded not guilty to all charges upon arraignment.

{¶5} A bench trial on both cases commenced on April 4, 2017. Appellee, the state of Ohio, submitted six exhibits and the following three witnesses testified on its behalf: Terry Foster, the victim; Jacob Ricket, a friend of Foster's; and Officer Mike Palinkas, with the Ashtabula City Police Department. Appellant did not testify and presented no witnesses.

{¶6} Terry Foster lived at 1513 West Prospect in Ashtabula, Ohio. At times, appellant would stay at Foster's residence in a spare bedroom located on the first floor. Foster's bedroom and the only bathroom were upstairs.

{¶7} Foster had a checking account with Key Bank. He kept his checks on the top shelf in his kitchen pantry. The checks were in open view. Foster indicated that appellant had utilized the pantry during his stays.

{¶8} In September 2014, Foster opened the pantry to get new checks. He noticed some were missing. Foster went to the bank and obtained copies of the missing checks. There were four checks, all written to appellant, which totaled $740. Foster testified he had never written checks to appellant, never went with appellant to the bank to give him money, and never owed appellant any money.

{¶9} The first check, No. 1371, was written out to appellant for $200 and Foster testified it was not his signature on the check. (State's Exhibit A). The second check, No. 1376, was written out to appellant for $140 and Foster testified it was not his signature on the check. (State's Exhibit B). The third check, No. 1377, was written out to appellant for $200 and Foster testified it was not his signature on the check. (State's Exhibit C). The fourth check, No. 1378, was written out to appellant for $200 and Foster testified it was not his signature on the check. (State's Exhibit D).

{¶10} Foster reported the missing checks to the police. Foster had no contact with appellant for several months. Appellant later returned to Foster's house claiming he was homeless. Foster let him inside. Appellant stayed at Foster's home for about a week. Appellant never said anything about the four checks. Foster did not follow up with the police regarding the checks because he felt sorry for appellant.

{¶11} Thereafter, on October 7, 2016, Foster was home with his friend, Jacob Ricket. They heard people yelling in the backyard. Foster looked out the window and

saw appellant and his girlfriend. Foster told appellant to leave. Appellant asked to use the bathroom. Foster permitted appellant, waited awhile, then followed him upstairs.

{¶12} Foster saw appellant in his bedroom holding Foster's wallet, which had about $40 to $60, and asked him what he was doing. Foster said appellant stuck something in his back pocket. Foster told appellant to give him his money back and appellant grabbed his wrists. Foster began yelling.

{¶13} Ricket heard the yelling and went upstairs. Ricket observed appellant with Foster's wallet and money in hand. Appellant threw the wallet and money, a crumpled $20 bill, on the bed. Appellant grabbed Foster, moved him out of the way, and left with a bag of clothing from his previous visits. Ricket saw money in appellant's back pocket.

{¶14} After appellant left the residence, Ricket confronted him in the driveway and asked to see his pockets. Appellant partially pulled out his pockets. Although Ricket did not see any money at that time, he testified that it could have been there and that appellant did not empty every pocket.

{¶15} Officer Palinkas was dispatched to Foster's residence in reference to an assault and theft. He observed fresh injuries on Foster's arm. Officer Palinkas later located appellant at Circle K in Geneva, about a quarter of a mile or less from Foster's home. Appellant was sweating profusely and slightly out of breath. Appellant was hunched over a garbage can in an apparent attempt to catch his breath. Appellant was instantly argumentative and claimed he did nothing wrong. Officer Palinkas had to use force to detain him. After a struggle, appellant was placed under arrest and transported to the station.

{¶16} Following trial, appellant was found guilty on all four charges.

**{¶17}** On May 5, 2017, in Case No. 2016 CR 00616, the trial court sentenced appellant to four years on count one, robbery, and ten months on count two, theft from a person in a protected class. The sentences were ordered to be served concurrently with one another. The court did not assess a fine but ordered appellant to pay $20 in restitution to the victim.

**{¶18}** Also on May 5, 2017, in Case No. 2016 CR 00697, the trial court sentenced appellant to ten months on count one, theft, and ten months on count two, forgery. The sentences were ordered to be served concurrently with one another and concurrently with the sentence imposed in Case No. 2016 CR 00616 for a total of four years in prison. The court did not assess a fine but ordered appellant to pay $740 in restitution to the victim.

**{¶19}** Appellant filed timely appeals, Case Nos. 2017-A-0030 and 2017-A-0031, which were sua sponte consolidated for all purposes by this court, and asserts the following three assignments of error:

**{¶20}** "[1.] Defense counsel was ineffective in failing to object to Foster's competency in authenticating State's Exhibits A, B, C, and D, which were the photocopies of Foster's cancelled checks, and to Foster's testimony about what he learned from the bank regarding them.

**{¶21}** "[2.] The trial court abused discretion in admitting into evidence State's Exhibits A, B, C, and D, which were the photocopies of the Foster's cancelled checks, and Foster's testimony about them.

**{¶22}** "[3.] The trial court erred in ordering appellant to pay restitution."

5

{¶23} In his first assignment of error, appellant argues his trial counsel was ineffective in failing to object to Foster's competency in authenticating the photocopies of Foster's cancelled checks and to Foster's testimony about what he learned from the bank regarding them.

{¶24} In his second assignment of error, appellant contends the trial court abused its discretion in admitting into evidence the photocopies of Foster's cancelled checks and Foster's testimony about them.

{¶25} As appellant's first and second assignments of error are interrelated, and as appellant asserts them together in his brief, we will address them in a consolidated fashion.

{¶26} "The trial court has broad discretion in the admission and exclusion of evidence. *State v. Hymore* (1967), 9 Ohio St.2d 122, 128 * * *. An appellate court shall not disturb evidentiary rulings absent an abuse of discretion. Id." (Parallel citation omitted.) *State v. Golding*, 11th Dist. Lake No. 2008-L-049, 2009-Ohio-1437, ¶21. Regarding this standard, we recall the term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record. *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925). An abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶15 (8th Dist.).

{¶27} ""In order to prevail on an ineffective assistance of counsel claim, a petitioner must satisfy the two-prong test set forth in *Strickland v. Washington* (1984), 466 U.S. 668 (* * *) (* * *). (* * *) Thus, appellant must show that counsel's performance

6

was deficient and 'must also show prejudice resulting from the deficient performance.'" (Citations omitted.) *State v. Kirschenmann,* 11th Dist. Portage Nos. 2014-P-0031 and 2014-P-0032, 2015-Ohio-3544, ¶16. *See State v. Henry,* 11th Dist. Lake No. 2007-L-142, 2009-Ohio-1138, ¶50–59; *State v. Peoples,* 11th Dist. Lake No. 2005-L-158, 2010-Ohio-2523, ¶17-30.

**{¶28}** "'"Under *Strickland* as interpreted by Ohio courts, attorneys are presumed competent, reviewing courts must refrain from second-guessing strategic, tactical decisions and strongly presume that counsel's performance falls within a wide range of reasonable legal assistance.'" *State v. Brown,* 11th Dist. Ashtabula No. 2013-A-0065, 2014-Ohio-2878, ¶42, quoting *State v. Carter,* 72 Ohio St.3d 545, 558 * * * (1995). "'Trial tactics (including a failure to object) do not substantiate a claim of ineffective assistance of counsel.'" *Brown, supra,* at ¶50, quoting *Henry, supra,* at ¶78." (Parallel citation omitted.) *State v. McAdams*, 11th Dist. Lake No. 2016-L-028, 2016-Ohio-8225, ¶22-23.

**{¶29}** Evid.R. 801 provides in part:

**{¶30}** "The following definitions apply under this article:

**{¶31}** "(A) Statement. A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion.

**{¶32}** "(B) Declarant. A 'declarant' is a person who makes a statement.

**{¶33}** "(C) Hearsay. 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

**{¶34}** Evid.R. 802 states:

7

{¶35} "Hearsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio."

{¶36} Evid.R. 803(6) provides:

{¶37} "The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

{¶38} "* * *

{¶39} "(6) Records of Regularly Conducted Activity. A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."

{¶40} Appellant posits and his counsel asserted at oral argument that the photocopies of Foster's checks were not properly authenticated. Evid.R. 901(A) states that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(B) provides examples of methods

for authenticating evidence, however, the rule also states that these are examples and not limitations on the way evidence may be authenticated.

{¶41} Foster testified as follows: he identified four checks bearing his name and account number; he identified them as checks provided to him by Key Bank; he stated all four checks were made out to appellant, identified the check numbers, and the amounts in which the checks were written; he said the signatures on the checks were not his; and that the checks did not appear to be altered in any way. Thus, the state presented "evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). Contrary to appellant's position, these four checks were properly admitted by the trial court.

{¶42} Appellant further raises the argument that Foster's testimony regarding the checks was improperly admitted hearsay and that the business records exception under Evid.R. 803(6) has an authentication requirement which must be met before the rule applies. Specifically, appellant asserts and his counsel raised the following at oral argument: that Foster had no personal knowledge of the record-keeping system of Key Bank; that the state did not call to the stand any Key Bank employee to authenticate the photocopies of Foster's checks; and the state did not call any Key Bank employee to testify as to the nature of the bank's record-keeping practices. Based on the facts presented, we disagree.

{¶43} Photocopies of the checks, State's Exhibits A through D, were properly admitted. "Commercial paper, which by definition includes bank checks and drafts, the signatures thereon, and the documents relating thereto, are *self-authenticating* pursuant to Evid.R. 902(9)." (Emphasis added.) *State v. Doane*, 11th Dist. Trumbull No. 91-T-

9

4639, 1994 WL 721648, *2 (Dec. 16, 1994). "[A] duplicate is admissible *to the same extent* as the original[.]" (Emphasis added.) *Id.* at *3.

**{¶44}** In addition, Foster did not testify regarding any statements made to him by Key Bank nor did he offer "evidence to prove the truth of the matter asserted." Evid.R. 801(C). Rather, Foster identified the checks as bearing his name and account number. Foster identified the checks as being written to appellant. Foster testified he did not write the checks. And Foster offered no testimony as to who forged the checks. Thus, contrary to appellant's argument, Foster's testimony was not hearsay and was properly admitted by the trial court.

**{¶45}** Upon review, we fail to see any abuse of discretion in the trial court's admission of the photocopies of Foster's cancelled checks and his testimony about them. *See Golding, supra,* at ¶21, citing *Hymore, supra,* at 128. We further fail to see how the cancelled checks and Foster's testimony created a prejudicial effect sufficient to substantially outweigh the evidence's probative value. *See State v. McAdams*, 11th Dist. Lake No. 2016-L-028, 2016-Ohio-8225, ¶30, citing Evid.R. 403, *State v. Kovacic,* 11th Dist. Lake No. 2010-L-065, 2012-Ohio-219, ¶33. Trial counsel's failure to object, i.e., a trial tactic, will not be second-guessed by this court. *McAdams* at ¶30, citing *Brown, supra,* at ¶50, quoting *Henry, supra,* at ¶78. Appellant cannot show prejudice as a result from any deficient performance and cannot show that the outcome would have been different. Thus, appellant fails to satisfy both prongs under *Strickland.*

**{¶46}** Appellant's first and second assignments of error are without merit.

**{¶47}** In his third assignment of error, appellant alleges the trial court erred in ordering him to pay restitution.

{¶48} Appellant failed to object to the trial court's order to pay restitution. "Failure to object to the court's order of restitution or fines constitutes a waiver of all error except plain error." *State v. Bernadine*, 11th Dist. Portage No. 2010-P-0056, 2011-Ohio-4023, ¶26, citing *State v. Bielek*, 11th Dist. Lake No. 2010-L-029, 2010-Ohio-5402, ¶13; *State v. Brantley,* 8th Dist. Cuyahoga No. 94508, 2010-Ohio-5760, ¶12.

{¶49} Crim.R. 52(B) provides: "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." An alleged error is plain error only if the error is obvious, and "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long*, 53 Ohio St.2d 91, paragraph two of the syllabus (1978).

{¶50} In this case, the trial court, within its discretion, properly considered appellant's future ability to pay restitution.

{¶51} "'Before imposing a financial sanction under section 2929.18 of the Revised Code (* * *), the court shall consider the offender's present and future ability to pay the amount of the sanction or fine.' R.C. 2929.19(B)(6). R.C. 2929.18 'does not require a court to hold a hearing on the issue of a defendant's ability to pay; rather, a court is merely required to consider the offender's present and future ability to pay.' *State v. Bielek,* 11th Dist. No. 2010-L-029, 2010-Ohio-5402, at ¶11 (citation omitted). 'However, some evidence must be present in the record to indicate that the trial court considered an offender's present and future ability to pay.' *State v. Sampson,* 11th Dist. No. 2007-L-075, 2007-Ohio-7126, at ¶14 (citation omitted)." *Bernadine, supra,* at ¶25.

{¶52} Adequate compliance with the statute may be had when the record indicates a court has considered a pre-sentence investigation report. *See Bernadine,*

*supra,* at ¶28, citing *State v. Ankrom,* 11th Dist. Lake No. 2006-L-124, 2007-Ohio-3374, ¶23; *State v. Miller,* 2d Dist. Clark No. 08CA0090, 2010-Ohio-4760, ¶39 ("(i)nformation contained in a presentence investigation report relating to defendant's age, health, education, and employment history, coupled with a statement by the trial court that it considered the presentence report," is "sufficient to demonstrate that the trial court considered defendant's ability to pay a financial sanction"); *State v. Dunaway,* 12th Dist. Butler No. CA2001-12-280, 2003-Ohio-1062, at ¶¶ 37-38 (the trial court considered a defendant's present and future ability to pay when it stated that it considered the PSI).

{¶53} Here, the PSI contains information relating to appellant's age (d.o.b. August 4, 1985), health (physical health - "good," mental health – suffers from depression and anxiety and prescribed medication (unverified)), education (high school diploma), and employment history (unemployed). The information contained in the PSI was coupled with a statement by the trial court in its May 5, 2017 judgment entries that it considered the PSI. Thus, the foregoing is sufficient to demonstrate that the trial court considered appellant's present and future ability to pay restitution and, therefore, adequately complied with the statute, especially when viewing the court's judgments under the plain error standard. *Bernadine, supra,* at ¶28.

{¶54} Appellant's counsel asserted at oral argument that the trial court erred by imposing any monetary amount upon appellant. We stress that although the trial court imposed restitution on appellant, an indigent defendant, it did not assess any fines in either case. *See State v. Moore*, 11th Dist. Trumbull No. 2015-T-0072, 2017 WL 3226468, ¶64 (O'Toole, J., concurred with a Concurring Opinion) (the trial court properly ordered restitution but waived fines on an indigent defendant). As stated, in Case No.

2016 CR 00616, appellant was ordered to pay $20 in restitution to the victim. In Case No. 2016 CR 00697, appellant was ordered to pay $740 in restitution to the victim.

{¶55} R.C. 2929.18(A)(1) states in part:

{¶56} "If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense."

{¶57} As addressed, based on the facts presented and including Foster's testimony, the total amount of restitution ordered, $760, was supported by competent credible evidence and within the trial court's discretion. *See Bielek*, *supra,* at ¶12 (holding that an order of restitution must be supported by competent credible evidence in the record and a sentence of restitution must be limited to the actual economic loss caused by the illegal conduct for which the defendant was convicted.)

{¶58} Appellant's third assignment of error is without merit.

{¶59} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgments of the Ashtabula County Court of Common Pleas are affirmed.

DIANE V. GRENDELL, J.,

CYNTHIA WESTCOTT RICE, J.,

concur.

13